IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **BARBARA THOMAS**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>**LOVE'S TRAVEL STOPS & COUNTRY STORES, INC.**, an Oklahoma corporation,<br><br>Defendant. | Case No.<br><br>Hon. |

**COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiff Barbara Thomas ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, hereby brings this Collective and Class Action Complaint against Defendant Love's Travel Stops & Country Stores, Inc. ("Defendant"), and states as follows:

**INTRODUCTION**

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and common law.

2. Defendant owns and operates a "travel stop network with 670 Love's locations in 42 states" and "provides professional truck drivers and motorists with 24-hour

access to clean and safe places to purchase gasoline, diesel fuel, fresh coffee, restaurant offerings and more" as well as "24/7 Roadside Assistance for Commercial Trucks."[1]

3. To support this network, Defendant maintains customer service and roadside assistance teams across the United States.[2]

4. In providing the aforementioned services, Defendant employed customer service representatives in on-site and remote settings across the United States. Defendant used a number of job titles, including, but not limited to, Customer Service Representatives to refer to their patient access employees (collectively referred to herein as "Customer Service Representatives" or "CSRs"). Defendant heavily relied on CSRs to, among other things, field calls from commercial trucks, schedule commercial truck maintenance, and connect commercial truckers with campground reservations.

5. Defendant classified its CSRs as non-exempt and tasked them with the primary job duty of providing over-the-phone customer service.

6. Defendant employed Plaintiff as a CSR.

7. The United States Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[3]

---

[1] *See* https://www.loves.com/about-us (last visited July 13, 2026); https://www.loves.com/loves-truck-care-and-speedco/roadside-assistance (last visited July 13, 2026).

[2] *Id.*

[3] *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/whd/regs/compliance/whdfs64.pdf (last visited Aug. 1, 2023).

8. One of those abuses, which is at issue in this case, is the employer's refusal to pay for work from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

9. More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

10. Defendant violated the FLSA and common law by systematically failing to compensate their CSRs for work tasks completed before their scheduled shifts and during their unpaid meal periods when they were not logged into Defendant's timekeeping system, which resulted in CSRs not being paid for all overtime hours worked, overtime gap time when associated with unpaid overtime and in non-overtime workweeks, for regular hours.

11. More specifically, Defendant failed to compensate CSRs for the substantial time they spent turning on and booting up their computer and computer systems prior to clocking into Defendant's timekeeping system.

12. Plaintiff seeks a declaration that her rights, and the rights of the putative Collective and Class members, were violated, a judgment awarding unpaid back wages, liquidated damages, attorneys' fees and costs to make them whole for damages they

suffered, and any other remedies to which they may be entitled, and to help ensure Defendant will not subject future workers to the same illegal conduct in the future.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq*.

14. Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

15. Defendant's annual sales exceed $500,000, and Defendant has more than two employees; thus, the FLSA applies in this case on an enterprise basis. Defendant's CSRs engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

16. The Court has personal jurisdiction over Defendant because Defendant conducts business within the State of Oklahoma, employs individuals within the State of Oklahoma, is registered with the Oklahoma Secretary of State, and maintains its principal place of business in the State of Oklahoma.

17. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant's principal place of business is in this District and a substantial portion of the events that give rise to the Plaintiff's claims occurred in this District.

## PARTIES

18. Plaintiff is a resident of Oklahoma City, Oklahoma, and worked at Defendant's Oklahoma City location as an hourly, non-exempt CSR with the specific job title of Customer Service Representative from approximately August 2022 through January 2025. Defendant compensated Plaintiff through the payment of an hourly rate, most recently $17 per hour. Plaintiff's consent to join this collective action is attached hereto as **Exhibit 1**.

19. Defendant Love's Travel Stops & Country Stores, Inc. is an Oklahoma For-Profit Corporation registered with the State of Oklahoma. Defendant maintains a registered agent for service of process listed as CT Corporation System, 1833 Morgan Road, Oklahoma City, Oklahoma 73128.

## GENERAL ALLEGATIONS

20. Defendant paid its CSRs at varying hourly rates.

21. Plaintiff and Defendant's CSRs typically worked five (5) days each week and forty (40) hours per week.

22. While Defendant has access to all payroll records, Plaintiff does not, and there were one or more instances during Plaintiff's employment when she worked forty (40) hours or more in a workweek.

23. Prior to hiring, Defendant provided prospective CSRs with a written offer setting forth the CSR's terms of employment, the offered rate of pay, work schedule and other information.

24. Defendant maintains documents demonstrating the promised hourly wage

for each CSR, including, but not limited to: offer letters, paystubs, and/or other payroll records.

25. Plaintiff received such an offer from Defendant to work as a CSR and she accepted Defendant's offer with the understanding that her base hourly rate would be paid for all hours worked.

26. In consideration for Plaintiff's work as a CSR, Defendant promised to pay Plaintiff her hourly wage for each hour she worked for Defendant, as well as any overtime hours worked.

27. Plaintiff performed and fulfilled her duties under her contract with Defendant by carrying out her job responsibilities, which included, but were not limited to, scheduling patient appointments, sending messages to medical staff, refilling prescriptions, and connecting patients with medical offices. The aforementioned customer service was provided via inbound and outbound calls and Plaintiff utilized Defendant's applications and systems to track all events and customer service information. Plaintiff additionally performed the required unpaid off-the-clock work explained below.

28. Defendant provided training to CSRs on, *inter alia*, how to carry out their day-to-day job duties, how to track their time, how to load and log into their computer programs at the beginning of the day and how to log out at the end of the day; attendance, schedule, and call quality expectations; and Defendant's policies. The training that all of Defendant's CSRs received was substantially, if not entirely, the same.

29. At all relevant times, Defendant controlled Plaintiff and all other CSRs' work schedules, duties, protocols, applications, assignments, and employment conditions.

30. In order to perform their job duties, Plaintiff and Defendant's CSRs required a computer and a variety of essential and indispensable computer programs, applications, and servers.

31. Plaintiff and other similarly situated CSRs were instructed to be call ready the moment their scheduled shift started, yet Defendant prohibited them from clocking in before the start of their shift. This required Defendant's CSRs to be logged into and have loaded all of their essential work-related computer programs and applications prior to the start of their shift so they could be prepared to take calls the moment their shifts began. During the boot-up and login process, Defendant's CSRs often experienced technical difficulties, increasing the amount of off-the-clock work they performed that day.

32. All of Defendant's CSRs used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and an important part of the CSRs' work and they could not perform their jobs without them.

33. Defendant's CSRs also performed off-the-clock work when returning from lunch and preparing themselves to be call ready the moment their meal periods concluded.

34. At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and its CSRs in order to pressure them into performing pre-shift work off-the-clock.

35. The pre-shift off-the-clock time Plaintiff and all other CSRs spent booting-up/logging into their computers and applications and programs directly benefited Defendant and was integral and indispensable to the CSRs' job responsibilities.

36. As a result of the pre-shift off-the-clock work described herein, Plaintiff and other CSRs were unlawfully deprived of approximately fifteen to twenty minutes of compensation every day.

37. At all relevant times, Defendant was able to track the amount of time Plaintiff and similarly situated CSRs spent in connection with the pre-shift activities; however, Defendant failed to do so and failed to compensate Plaintiff and all other CSRs for the off-the-clock work they performed, thus breaching their contracts with their CSRs.

38. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

39. Despite knowing Plaintiff and all other CSRs performed this pre-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

40. Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and all other CSRs booted-up and logged into their computers each day, along with the time they logged into the timekeeping system.

41. Upon information and belief, Defendant also possesses, controls, and/or has access to information and electronic data indicating when Plaintiff and all other CSRs experienced technical issues.

42. Because Defendant required its CSRs, including Plaintiff, to perform pre- and mid-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time CSRs spent working for Defendant. Thus, the hours reflected on the CSRs' paystubs are also inaccurate representations of the

hours they worked.

**A. <u>Pre-Shift Off-the-Clock Work</u>**

43. The off-the-clock pre-shift process took substantial time on a daily basis, approximately fifteen (15) to twenty (20) minutes per shift. Specifically, before each shift CSRs had to undertake the following essential work tasks: turn on or wake up their computer; log into Microsoft Windows with a username and password; open various programs and applications that were integral and indispensable to their job duties as Representatives, including but not limited to Salesforce and CampLife.

44. Only once all applications were open and loaded, could Plaintiff and the CSRs clock in.

45. Defendant's CSRs had to complete this process before the start of their scheduled shifts and before fielding calls. Consequently, the CSRs had to arrive to work approximately fifteen (15) to twenty (20) minutes before their scheduled shifts to complete their above-described start-up and log-in activities.

46. Defendant's CSRs were not compensated for this time because Defendant prohibited CSRs from clocking into its timekeeping software before the start of their scheduled shift.

47. The pre-shift off-the-clock work CSRs performed directly benefited Defendant and was integral and indispensable to their job duties and responsibilities as CSRs.

**<u>COLLECTIVE ACTION ALLEGATIONS</u>**

48. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on

behalf of themselves and on behalf of:

> ***All current and former similarly situated CSRs who work or have worked for Defendant at any time during the past three years.***

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

49. Excluded from the FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

50. Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

51. Consistent with Defendant's policies and practices, Plaintiff and the FLSA Collective were not paid for all straight and/or premium overtime compensation in workweeks during which they worked beyond forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

52. All of the work Plaintiff and the FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work the Plaintiff and the FLSA Collective performed.

53. Defendant was aware, or should have been aware, that federal law required them to pay Plaintiff and the FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

54. As part of their regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with

respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

a. Willfully failing to pay their employees, including Plaintiff and the members of the FLSA Collective, for all regular hours that they worked off-the-clock in non-overtime workweeks;

b. Willfully failing to pay their employees, including Plaintiff and the members of the FLSA Collective, for all overtime gap time and premium overtime wages for hours that they worked off-the-clock in excess of forty (40) hours per workweek; and

c. Willfully failing to record all of the time that their employees, including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendant.

55. Defendant's unlawful conduct has been widespread, repeated, and consistent.

56. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

57. The employment relationships between Defendant and every FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues are the same for every FLSA Collective member, to wit: whether the FLSA Collective members were (1) required to work uncompensated boot-up and login time and (2) entitled to overtime gap time in overtime workweeks.

**RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS**

58. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> ***All current and former similarly situated CSRs who work or have worked for Defendant at any time during the applicable statutory period.***

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

59. Plaintiff, and similarly situated CSRs, regularly worked non-overtime hours (i.e., "gap time") for which they were not paid.

60. During the weeks that CSRs do not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices were a deprivation of straight-time wages, in breach of Defendant's contracts with their CSRs.

61. The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are thousands of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

62. There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

a. Whether the pre-shift time Rule 23 Nationwide Class members spent on

startup and login activities each shift is compensable time under applicable law;

b. Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

c. Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

63. Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

64. Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

65. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

66. This case will be manageable as a Rule 23 Class action. Plaintiff and her

counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

67. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

68. Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq.* -- FAILURE TO PAY OVERTIME

69. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

70. At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

71. At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

72. At all times relevant to this action, Plaintiff was an "employee" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

73. At all times relevant to this action, Defendant "suffered or permitted"

Plaintiff and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

74. Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were are all non-exempt employees.

75. Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

76. The FLSA requires an employer to pay employees for all hours worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

77. The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. § 516.1, *et seq*.

78. At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiff and all the FLSA Collective members to work off-the-clock, every shift, and failed to pay these employees overtime gap time in weeks where it occurred, and the federally mandated overtime compensation for all work performed.

79. The off-the-clock work Plaintiff and the FLSA Collective performed every shift was an essential part of their job duties and the activities and the time associated with the activities was significant.

80. In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty

(40) hours when considering the uncompensated off-the-clock work time discussed herein, all of this overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including a shift differential where applicable. 29 U.S.C. § 207.

81. As a result of Defendant's unlawful policies and practices, Plaintiff and the FLSA Collective members were deprived of both straight time and overtime wages in violation of the FLSA.

82. Defendant's violations of the FLSA were knowing and willful. Defendant could have easily accounted for and properly compensated Plaintiff and the FLSA Collective members for all work activities, but did not.

83. As a result of the foregoing, Plaintiff was injured and seeks appropriate relief against Defendant including unpaid wages (including unpaid overtime), an additional equal amount in liquidated damages (double damages), reasonable attorneys' fees and costs, interest, and all other relief just and appropriate under the circumstances.

## COUNT II
## RULE 23 NATIONWIDE CLASS ACTION
## NATIONWIDE BREACH OF CONTRACT

84. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

85. At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members

performed on behalf of Defendant.

86. Evidence of these contracts include Defendant's letters offering employment, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for CSR work, which Plaintiff accepted and performed, but Defendant failed to perform by paying Plaintiff and the Rule 23 Nationwide Class the promised wages.

87. For example, Defendant offered to compensate Plaintiff at an hourly wage, most recently $17 per hour, if she agreed to perform services for Defendant as a CSR. Plaintiff accepted Defendant's offer and performed her duties as a CSR in reliance on the offer.

88. Defendant breached its contractual promises by failing to pay CSRs at their fixed, pre-agreed upon hourly rate for all of the hours worked.

89. Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to a minimum hourly rate that varied within the applicable period.

90. Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre- and mid-shift work described herein.

91. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for all the work they performed each shift in connection with

the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

92. Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this Complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

93. Plaintiff's and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., pure "gap time" claims for non-overtime hours/workweeks).

94. Defendant also breached its duties of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

95. As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT III**
**RULE 23 NATIONWIDE CLASS ACTION**
**NATIONWIDE UNJUST ENRICHMENT**

96. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

97. This Count is pled in the alternative to Count II, *supra*, pursuant to Fed. R.

Civ. P. 8(d)(2)-(3).

98. At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for Defendant's benefit.

99. Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

100. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

101. Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

102. Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

103. Despite this, Defendant did not pay Plaintiff and the Rule 23 Nationwide Class members for all of their work.

104. Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance their various business ventures.

105. Defendant was unjustly enriched by the retention of monies received

pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

106. Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

107. As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including, but not limited to, loss of wages.

## REQUESTED RELIEF

WHEREFORE, Plaintiff requests the following relief:

a. An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b. An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts II and III);

c. An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, email addresses, and phone numbers of all proposed FLSA Collective members, and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their right to join and participate in this lawsuit;

d. An Order designating Plaintiff as representative of the FLSA Collective and the Rule 23 Nationwide Class, and undersigned counsel as class counsel for the same;

e. An Order declaring Defendant violated the FLSA;

f. An Order declaring Defendant's violations of the FLSA were willful;

g. An Order declaring Defendant breached their contracts with Plaintiff and the members of the Rule 23 Nationwide Class (or, in the alternative, that Defendant were unjustly enriched) by failing to pay them for mandatory pre- and mid-shift work activities described herein at a pre-established (contractual) regularly hourly rate;

h. An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collective and the Rule 23 Nationwide Class the full amount of damages and liquidated damages available by law;

i. An Order compelling a complete accounting of all the compensation Plaintiff and all others similarly situated are owed;

j. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in prosecuting this action as required by statute;

k. An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

l. An Order awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: August 26, 2026

Respectfully Submitted,

*/s/ Amber L. Hurst*
Amber L. Hurst, OBA No. 21231
HAMMONS, HURST & ASSOC.
325 Dean A. McGee Avenue
Oklahoma City, OK 73102
Telephone: (405) 235-6100
amber@hammonslaw.com

Ethan C. Goemann (GA Bar No. 326816)*
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
egoemann@sommerspc.com

*Counsel for Plaintiff, the FLSA Collective and the Putative Class*

**Pro Hac Vice Forthcoming*

## CERTIFICATE OF SERVICE

I certify that on August 26, 2026, I electronically filed the forgoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

*/s/ Amber L. Hurst*
Amber L. Hurst